The CITY OF HOUSTON, Appellant

v.

Anja COTTON, Appellee.

No. 14–03–00637–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 28, 2005.

542

Constance K. Acosta, Timothy J. Higley, Houston, for appellant.

Martin A. Shellist, Houston, TX, for appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## SUBSTITUTE OPINION

EVA M. GUZMAN, Justice.

We withdraw our opinion of March 22, 2005, and issue this substitute opinion.

Anja Cotton sued appellant, the City of Houston, under the Texas Whistleblower Act.[1] She alleged the City terminated her employment as a sanitarian in retaliation for her having reported violations of law by two of her superiors. Following a bench trial, the court awarded Cotton $32,000.00 for past lost wages; $162,108.42 for attorney's fees; $9,570.97 for costs; $10,607.40 for prejudgment interest on the lost wages; and post-judgment interest.[2] In four issues, the City challenges the trial court's conclusions of law and the legal and factual sufficiency of the evidence to support the trial court's findings of fact, and also argues the trial court abused its discretion by awarding Cotton damages and attorney's fees when she failed to comply with the discovery rules. Concluding there is no evidence to support the trial court's finding Cotton made reports of violations of law in good faith, we reverse and render judgment in favor of the City.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning in December 1992, Cotton was a sanitarian with the City's Department of Health and Human Services ("Department"). Her duties included regularly inspecting restaurants and other food establishments in Houston to ensure they were operating in compliance with the City's health code and issuing citations for code violations she observed. In 1996, Cotton and a few co-workers were worried that municipal citations they had issued were being voided or destroyed by their immediate supervisor, Juan Munguia, and Chirag Bhatt, Manager of the Depart-

ment's Bureau of Consumer Health. They believed Bhatt was doing so as favors or for monetary gain. During this period, the Department did not have an accounting or log system for citations, and it was not uncommon for supervisors, as a matter of discretion, to void the citations issued by subordinates.

In October 1996, Bernard Silverman, also a sanitarian, filed a complaint with the City's Office of Public Integrity Review Group, predecessor of the present Office of the Inspector General ("OIG").[3] Silverman complained Bhatt, with the accommodation of other supervisors, was "fixing" tickets for specific establishments.

On February 10, 1997, Cotton provided OIG a sworn affidavit, invoking the protections of the Texas Whistleblower Act ("the Act"), and stating she wished "to file a formal written complaint asserting that members of the management team of the Health Department knowingly and willingly destroy Municipal Court Citations." She also stated citations were "continuously [sic] being pulled, voided and thrown away." She alleged that "[s]ince Bhatt became Division Manager of Consumer Health, enforcement of food and health [sic] has become non existing [sic] in certain food establishment [sic]." Finally, Cotton stated some establishment owners would tell inspectors that Bhatt and another supervisor would pull tickets if any were issued to them, with the result that some inspectors stopped issuing citations or took citations directly to municipal court

---

1. *See* TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 2004).

2. The court also ordered that, if the City appealed the final judgment to the court of appeals, it would be liable for an additional sum of $15,000 for work associated with the appeal. If the City appealed to the Texas

Supreme Court, it would be liable for $7,500 in addition to the $15,000.

3. OIG was created in February 1998 and was the agency that completed the investigation begun by Silverman's complaint. Unless necessary to distinguish the two agencies, we refer to both as "OIG."

because they feared the citations would otherwise be pulled.

On July 2, 1998, OIG sent Department Director Dr. Mary Kendrick a copy of the Summary and Conclusions to the OIG Investigation Report. The Summary and Conclusions indicate "[s]tatements obtained by Officer Calix [the investigating officer] revealed a routine pattern in which Sanitarians were impeded from enforcement of the Health Code by either Mr. Bhatt, or the Chief Sanitarians under him, by either voiding the citations or going to the business to prevent them from being issued." The investigation "revealed no evidence of supervisory personnel receiving any monetary benefit for dismissing citations." The case was presented to the Harris County District Attorney's office for review, but the office found no evidence of criminal conduct, and the case was concluded without charges being filed. Before the investigation concluded, Earl Travis, Department Deputy Director, had instituted a policy requiring that he approve the cancellation of all Consumer Health citations until further notice.

On August 9, 1998, a Sunday, Cotton inspected a Fiesta Mart grocery store. She submitted an inspection report indicating she had conducted the inspection from 12:44 p.m. until 8:45 p.m. and had inspected eight departments, including a pizza bar.[4] Salah Assem, the Fiesta store manager, signed each of the eight pages of the report.

Cotton submitted her overtime request to Munguia. Munguia then presented the overtime request to Bhatt for approval. At that time, Bhatt told Munguia to do a targeted Quality Assurance ("QA") audit on Cotton's August 9 Fiesta inspection.[5]

Munguia conducted the QA audit on August 17, 1998, and took Assem's statement. Assem stated they walked through all departments, the entire inspection took about one to one and a half-hours, and it concluded about 1:45 p.m.[6] According to Assem, Cotton then called her husband to pick her up. Assem stated that on her way out, Cotton said, " '[B]y-the-way, if anyone asks, I was here until 8:45.' " That same day, August 17, 1998, Bhatt recommended Cotton for indefinite suspension.[7]

On September 18, 1998, Kendrick notified Cotton in writing of the recommendation that her employment be terminated. The August 9, 1998 Fiesta inspection formed the basis of an allegation of falsification of a legal document; and another inspection, the basis of an allegation of violation of standards of conduct.

By letter dated November 5, 1998, Mayor Lee Brown notified Cotton he was indefinitely suspending her for falsifying food inspection reports, fraudulently receiving overtime, and abusing her official authority, based on her conduct during the two inspections.

Cotton appealed to the Civil Service Commission. On December 11, 1998, the

4. According to a March 17, 1998 memorandum, sanitarians were required to work at least fifteen hours of overtime per week to reduce a backlog.

5. Although at points both Munguia and Bhatt testified Munguia suggested or requested the QA, both ultimately agreed Bhatt directed Munguia to do the QA audit.

6. At trial in 2002, the Fiesta bakery, cold deli, and coffee shop managers testified their de-

partments had been inspected only briefly or not at all on August 9, 1998. One testified the Fiesta no longer had a pizza bar. The managers remembered the inspection because Sundays were busy and it was unusual to have an inspection on a Sunday.

7. There was also evidence that on August 27, 1998, Bhatt directed a memo to human resources manager Joe Kuhn recommending Cotton's indefinite suspension.

Commission sustained Mayor Brown's action.

Cotton then sued the City, alleging the City had terminated her employment because she reported Bhatt's and Munguia's alleged violations of the law to the Houston Police Department's Public Integrity Unit. Specifically, she alleged:

> During 1996, [Cotton] learned many of the citations she and other Sanitarians issued were revoked by her immediate supervisors, Juan Munguia and Chirag Bhatt, without her knowledge or consent. The revocation of the citations was in violation of the City of Houston policy regarding Health Code violations and the laws of the State of Texas. In essence, it was believed that Bhatt and Mungia [sic] were destroying government property, falsifying government records, and taking bribes from commercial establishments.

Following an eight-day trial to the bench in May 2002 and a hearing on attorney's fees in February 2003, the trial court rendered final judgment in favor of Cotton on February 28, 2003.[8] The City filed a motion for new trial, which was denied by operation of law. On June 11, 2003, the trial court filed the following findings of fact and conclusions of law:

**Findings of Fact:**

1. Plaintiff was an employee of the City of Houston Health and Human Services Department.

2. Plaintiff made reports of violations of law to the City of Houston Office of Inspector General.

3. Plaintiff made her reports of violations of law in good faith and to an appropriate law enforcement agency.

4. Plaintiff falsified her time records on August 9, 1998, to show that she was at the Fiesta store for over 8 hours. Based on her falsified report, Plaintiff requested and was paid overtime for hours she did not work.

5. The investigation of Plaintiff's time records that lead [sic] to Plaintiff's termination would not have occurred when it did, but for her reports of violations of law to the Office of Inspector General. Hence, but for her reports of violations of law, Plaintiff would not have been terminated when she was.

6. Plaintiff suffered past lost wages in an amount of $32,000.00.

7. Plaintiff is entitled to recover pre-judgment interest on lost wages at 10% per annum in the amount of $10,607.40.

8. Reasonable and necessary trial attorney's fees are $162,108.42. Reasonable and necessary attorney's fees in the event this case is appealed to the Court of Appeals are $15,000.00. Reasonable and necessary attorney's fees in the event this matter is appealed further to the Texas Supreme Court are $7,500.00.

9. Plaintiff has incurred costs of court in the amount of $9,570.97.

**Conclusions of Law:**

1. The City of Houston has violated the Texas Whistleblower Act, Texas Gov. Code, [ ] § 554.002(a).

2. Pursuant to the Texas Whistleblower Act, Texas Gov.Code, §§ 554.003(a) and (b), Plaintiff is entitled to Judgment against the City of Houston as follows:

 a. $32,000.00 for past lost wages.

---

8. Cotton sued the City in December 1998. The First Court of Appeals upheld the trial court's denial of the City's plea to jurisdiction in 2000. *See City of Houston v. Cotton,* 31 S.W.3d 823, 824 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

b. $10,607.40 for prejudgment interest.

c. Trial attorney's fees of $162,108.42.

d. Conditional appellate attorney's fees of:

i. $15,000.00 in the event of an appeal to the Court of Appeals.

ii. $7,500.00 in the event of a further appeal to the Texas Supreme Court.

e. $9,570.97 as costs of court.

f. Post judgment interest at 10% per annum on the entire sum (a-e, above), from the date of judgment until paid.

The City now appeals, challenging the trial court's conclusions of law and the factual and legal sufficiency of the evidence to support selected findings of fact.[9] The City also challenges the trial court's admission of evidence on, and the award of, damages and attorney's fees.

## II. ANALYSIS

### A. *Standard of Review*

We review conclusions of law de novo to determine whether they are correct. *Martin–Simon v. Womack,* 68 S.W.3d 793, 796 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We will uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Id.* Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

In reviewing a trial court's findings of fact for legal and factual sufficiency of the evidence, we apply the same standards we apply in reviewing the evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the findings. *Material P'ships, Inc. v. Ventura,* 102 S.W.3d 252, 257 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). When, as in the present case, both legal and factual sufficiency challenges are raised on appeal, the appellate court must first examine the legal sufficiency of the evidence. *Trimble v. Tex. Dep't of Protective & Regulatory Serv.,* 981 S.W.2d 211, 217 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

In conducting a legal-sufficiency review, we view the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). We may sustain a legal-sufficiency, or no-evidence, point if the record reveals one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *See Uniroyal Goodrich Tire Co.*

---

9. The City also states it appeals findings of fact the district court omitted and notes it could not have filed a request for additional findings because the trial court purportedly filed its findings of fact and conclusions of law after its plenary period had expired. The City does not develop or explain the significance of these statements. A trial court is not required to make additional findings of fact and conclusions of law when they are directly contrary to, or inconsistent with, the original findings and conclusions of the trial court. *Starcrest Trust v. Berry,* 926 S.W.2d 343, 354 (Tex.App.-Austin 1996, no writ).

*v. Martinez,* 977 S.W.2d 328, 334 (Tex. 1998). If more than a scintilla of evidence exists, it is legally sufficient. *Lee Lewis Constr.,* 70 S.W.3d at 782. More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83.

## B. *Is there legally sufficient evidence Cotton had a good faith belief the reported conduct was a violation of law?*

 In its third issue, the City asserts the evidence is legally insufficient to support the trial court's finding that Cotton in good faith believed the conduct she reported to OIG was a violation of law. Good faith as used in the Act means (1) the employee believed the conduct she reported was a violation of law and (2) the employee's belief was reasonable in light of her training and experience. *Wichita County v. Hart,* 917 S.W.2d 779, 784 (Tex. 1996). The first, or subjective, prong of the test embodies the concept of "honesty in fact" and ensures an employee seeking a remedy under the Act must have believed she was reporting an actual violation of the law. *See Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 320 (Tex.2002); *Hart,* 917 S.W.2d at 784–85. The second, or objective, prong ensures that, even if the reporting employee honestly believed the reported conduct was a violation of law, she receives protection under the Act "only if a reasonably prudent employee in similar circumstances would have believed that *the facts* as reported were a violation

of law." *Hart,* 917 S.W.2d at 785 (emphasis added); *see Needham,* 82 S.W.3d at 320. The objective reasonableness of an employee's belief must be viewed in light of her training and experience. *See Hart,* 917 S.W.2d at 785.

 The City asserts there is no evidence to support the trial court's implied finding that a reasonably prudent employee in similar circumstances would have believed the facts Cotton reported were a violation of law.[10] To analyze this issue, we must examine the facts Cotton reported. The body of Cotton's report to the OIG reads, in pertinent part, as follows:

My name is Anja Cotton.... I have attained approximately sixteen (16) years of formal education and am competent to make this sworn affidavit. I have personal knowledge concerning the facts stated herein. The facts stated herein are true and correct, except those stated on information and belief, which are true and correct to the best of my information and belief.

My name is Anja Cotton and I am currently employed at the City of Houston Health Dept. as a Sanitarian I. I have worked for the City of Houston for approximately six (6) years. Mr. Munguia is my immediate Supervisor and my working relationship with him has been excellent.

First, I want to invoke the protections offered by the Whistle blower [sic] Act as defined in V.T.C.A., Government

---

**10.** Under the Act, a "law" means (a) "a state or federal statute;" (b) "an ordinance of a local governmental entity;" or (c) "a rule adopted under a statute or ordinance." Tex. Gov't Code Ann. § 554.001(1) (Vernon 2004). An employee need not prove an actual violation of the law. *Llanes v. Corpus Christi Indep. Sch. Dist.,* 64 S.W.3d 638, 642 (Tex.App.-Corpus Christi 2001, pet. denied) (citing *City*

*of Brenham v. Honerkamp,* 950 S.W.2d 760, 763 (Tex.App.-Austin 1997, writ denied)). However, for an employee to sustain a claim under the Act, there must be some law prohibiting the conduct of which the employee complains. *Id.* In other words, "to recover under the Act, an employee must have a good-faith belief that a law, which in fact exists, was violated." *Id.* at 643.

Code Section 554.002 (1994) and as established by case law . . . .

. . .

I wish to file a formal written complaint asserting that members of the management team of the Health Department knowingly and willingly destroy Municipal Court Citations. Since Mr. Chirag Bhatt became Division Manager of Consumer Health, enforcement of food and health [sic] has become non existing [sic] in certain food establishment [sic]. Citations are continuously [sic] being pulled, voided and thrown away. I personally wrote six (6) tickets to Stephen Food Store, located at 3902 Bellfort, ticket # 04660433, 04660442, 04192605, 04660451, 4660415[sic], and 04660424 in 1996. These citations totaled eleven (11) violations. There is an unwritten policy within the Bureau of Consumer Health that is if [sic] an establishment refuses to close, then it is customary to issue tickets for as many violations that can be written, after receiving permission from your supervisor. I received Mr. Don Hsu [sic] permission to write the citations. A few weeks later I was looking through the voided ticket file which is kept at Ms. Renee Beckams' [sic] desk. I found all six (6) citations written to the above food store voided out.

After making copies of the citations I confronted my supervisor, Mr. Don Hsu about what I had found and he told me that Mr. Bhatt said he voided the citations because I had written to [sic] many. I asked Mr. Hsu, if that was the case, why did he pull all of them? Mr. Hsu could not answer my question.

Secondly, some owners of establishments will tell inspectors that Mr. Don Hsu or Mr. Bhatt will pull tickets if any are issued to them. This has made some inspectors stop issuing citations or they take the citation directly to Municipal Courts, fearing the ticket will be pulled. Mr. Bob Tannis, Assistant Director has been made aware of the situation but insist [sic] that nothing is going on.

In this report, Cotton alleges specific facts relating to six citations she wrote involving Stephen Food Store. The report makes it clear these citations were voided and placed in the voided citation file.

In addition, during the course of the investigation, Cotton told Calix that the owner of Shivas Restaurant had told her Bhatt was going to "pull" tickets she would write. Cotton provided Calix with copies of voided citations involving Shivas Restaurant.

Cotton does not assert similarly specific facts showing that Bhatt or any other manager at the City of Houston Health Department was destroying, removing, or defacing any citations or, in other words, violating any law. Instead, to "prove" a reasonably prudent employee in her circumstances would believe Bhatt was destroying citations, Cotton relies on second-level hearsay (Bhatt told operators of some establishments, who told Cotton, he would "pull" or tear up tickets) coupled with the alleged disappearance of citations she wrote to the same establishments. Other than having her citations disappear or never enter the court system, however, Cotton offered no evidence to establish why a reasonably prudent employee in her circumstances would have believed the establishment operators when they told her of their beliefs that Bhatt was physically destroying citations. She points to Brown and Silverman's similar beliefs, but the fact the three sanitarians may have shared the same belief begs the question of whether a reasonably prudent employee would have been justified in forming that belief.

Through Officer Miguel Calix's testimony in the trial court and in her arguments on appeal, Cotton points to section 37.10 of the Texas Penal Code. *See* TEX. PEN.CODE ANN. § 37.10(a)-(b) (Vernon 2004–05). Under this statute, a person commits a crime if he does any of the following:

- "knowingly makes a false entry in, or false alteration of, a governmental record;"
- "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record;"
- "intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record;" or
- "makes, presents, or uses a governmental record with knowledge of its falsity."

TEX. PEN CODE ANN. 37.10(a)(1), (2), (3), (5).

Both Cotton's report to the OIG and her trial testimony reflect she characterized managers' actions at the Health Department as "pulling," "voiding," "throwing away," or "destroying," citations that had been written. Regardless of the generic terms Cotton may have used to characterize the conduct of the management team, the facts Cotton reported are that (1) she wrote six citations containing eleven alleged violations regarding Stephen Food Store, (2) Bhatt later voided all of the citations, which were placed in the file for voided citations, (3) owners of establishments, including Shivas Restaurant, told her Bhatt had said he would "pull" tickets, and (4) the Shivas citations she wrote were voided.

Granted, Cotton testified she believed going behind her back and tearing up or voiding tickets was a violation of the law. Nevertheless, Cotton presented no evidence to show why a reasonably prudent

employee in her circumstances, with her training and over four years of experience as a sanitarian, would have believed that, by voiding and not proceeding with health department citations such as those she issued against Stephen Food Store, managers destroyed, concealed, or defaced government documents or otherwise violated section 37.10 of the Texas Penal Code. She also presented no evidence to show why a reasonably prudent employee, with her experience in a department where it was not uncommon for supervisors, as a matter of discretion, to void the citations issued by subordinates, would have believed the disappearance of citations she wrote gave credence to what establishment operators told her about Bhatt's tearing up tickets.

Although Cotton directs this court's attention to Calix's testimony, his testimony does not support the objective prong of the good-faith test. Calix testified that, if Bhatt had destroyed, torn up, or thrown away a citation before it was in the municipal court system, there would have been no violation of the law; however, if Bhatt had done so once the citation was in the system, there would have been a violation. Calix testified a document was designated a "government document" once "it goes through the system." Under both Calix's testimony regarding section 37.10 of the Penal Code and the unambiguous language of that statute, if managers in the City of Houston Health Department, in the course of their official duties, mark citations as void or decide not to pursue them further, without destroying, concealing, removing, or otherwise impairing the verity, legibility, or availability of the citations, this conduct does not violate section 37.10. *See* TEX. PEN.CODE ANN. 37.10(a).

Cotton also points to the following sentences in the OIG investigative report: "This investigation revealed sufficient evidence to confirm the original allegation of

[sic] Mr. Bhatt and several supervisor's [sic] destroying or dismissing citations. This investigation found, however, insufficient evidence to prove or disprove the allegations linking Mr. Bhatt or anyone else to criminal activity in obtaining illegal monetary benefits." Calix, the author of the report, however, testified, "[A] ticket that's destroyed in the sense I wrote it down meaning it was voided, meaning that it was not good at that time. Not destroyed in any sense of the word of shredding or tearing up, no, that's not the way I meant it."

In short, the only facts Cotton reported involved voiding—not destroying—citations; and there is no evidence a reasonably prudent employee in Cotton's circumstances would have believed the voiding of tickets was a violation of law. After reviewing the record under the applicable standard of review, we conclude there is legally insufficient evidence to support the trial court's implied finding that a reasonably prudent employee in similar circumstances would have believed the facts Cotton reported were a violation of law. *See Harris County Precinct Four Constable Dep't v. Grabowski,* 922 S.W.2d 954, 956 (Tex.1996) (per curiam) (holding, although there was some evidence plaintiff subjectively believed conduct he reported violated the law, there was legally insufficient evidence this belief was reasonable); *Lane v. Tex. Dept. of Health,* No. 03–02–00579–CV, 2003 WL 21750608, at *3–*6 (Tex. App.-Austin Jul. 30, 2003, pet. denied) (mem.op.) (stating there was legally insufficient evidence plaintiff's subjective belief—that the conduct she reported violated the law—was objectively reasonable); *Duvall v. Tex. Dept. of Human Servs.,* 82 S.W.3d 474, 482–83 (Tex.App.-Austin 2002, no pet.) (holding there was no evidence a reasonably prudent employee in similar circumstances would have believed facts reported by plaintiff were a violation of

law); *Tex. Dep't of Criminal Justice v. Terrell,* 18 S.W.3d 272, 276–77 (Tex.App.-Tyler 2000, pet. denied) (reversing and rendering judgment following jury trial because there was legally insufficient evidence a reasonably prudent employee in similar circumstances would have believed facts reported by plaintiff were a violation of law).

■ Although Cotton focuses on section 37.10 of the Texas Penal Code in her arguments concerning good faith, she states in a footnote in her brief that she "believed Bhatt's favoritism with Indian restaurants resulted in kickbacks and bribery which are clearly violations of law." To the extent Cotton asserts there is legally sufficient evidence to support an implied finding by the trial court that a reasonably prudent employee in similar circumstances would have believed the facts she reported constituted a violation of criminal laws against bribery and kickbacks, this argument lacks merit. The facts reported to the OIG by Cotton do not show that managers in the City of Houston health department were accepting bribes or kickbacks. Cotton does not state that any person was accepting bribes or kickbacks.

Although Cotton reported Bhatt voided citations, this is not by itself, a report of bribery. Bhatt's voiding of citations could have stemmed from a difference in enforcement philosophy between Bhatt and Cotton. In her OIG report, for example, Cotton states, based on an "unwritten policy," she set out to write as many citations for violations as she could against Stephen Food Store (which was not an Indian-owned establishment) because that store refused to close. Although she states she received permission from Hsu to write the citations, Bhatt apparently decided on a different approach. Cotton's report does not include her beliefs regarding Bhatt's

reasons for voiding the citations, but there could have been explanations other than bribery or kickbacks. Stating Bhatt voided the citations is not in any way equivalent to reporting Bhatt accepted bribes or kickbacks from someone acting on behalf of Stephen Food Store. Similarly, although Cotton stated some establishment owners told sanitarians that Hsu or Bhatt would void citations issued against these establishments, reporting this conduct on the part of the establishment owners is not the same as stating Hsu and Bhatt are accepting bribes or kickbacks from these owners.

### III. CONCLUSION

Having determined that there is legally insufficient evidence to support the trial court's implied finding that a reasonably prudent employee in similar circumstances would have believed the facts reported by Cotton were a violation of law, we sustain the City's third issue in this regard, and we need not address the City's other issues. Accordingly, we reverse the trial court's judgment and render judgment that Cotton take nothing from the City of Houston.