

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00076-CV

_____

STATE OFFICE OF RISK MANAGEMENT, Appellant

V.

ELAINE E. BANKS JOINER, Appellee

On Appeal from the 419th Judicial District Court
Travis County, Texas
Trial Court No. D-1-GN-08-000326

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

This opinion on rehearing is issued as a substitute for our original opinion issued January 12, 2012.

## I.    Background

This workers' compensation case emanates from a slip and fall injury Elaine E. Banks Joiner sustained while employed by the Texas Department of Health and Human Services in July 2004.[1]  As a result of her fall, Joiner underwent a distal clavicle resection arthroplasty of the right shoulder and a partial lateral menisectomy of the right knee.

Joiner's treating physician, Brent Davis, M.D., examined her on July 17, 2006, issued a report finding a maximum medical improvement date of July 5, 2006,[2] and assessed a permanent impairment rating of thirty-four percent for Joiner.  Davis later issued a TWCC-69 report of medical evaluation, which indicated a clinical maximum medical improvement date of July 17,

---

[1] Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).  We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

[2] "Maximum medical improvement" is defined as the earlier of "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated" (referred to as "clinical maximum improvement") or "the expiration of 104 weeks from the date on which income benefits begin to accrue" (referred to as "statutory maximum medical improvement").  TEX. LAB. CODE ANN. § 401.011(30) (West Supp. 2011); *Fireman's Fund Ins. Co. v. Weeks*, 259 S.W.3d 335, 340 (Tex. App.—El Paso 2008, pet. denied).  In order to obtain impairment benefits, an employee must be certified by a doctor as having reached maximum medical improvement and must be assigned an impairment rating by a certifying doctor.  TEX. LAB. CODE ANN. § 408.123(a) (West 2006).  An impairment rating is defined as "the percentage of permanent impairment of the whole body resulting from the current compensable injury."  28 TEX. ADMIN. CODE § 130.1(c)(1) (West, Westlaw current through 2011) (Tex. Dep't of Ins., Div. of Workers' Compensation, Certificate of Maximum Med. Improvements & Evaluation of Permanent Impairment).

2

2006. The Department of Insurance—Division of Workers' Compensation (the Division) appointed Elliot Bader, M.D., as the designated doctor.[3] Bader examined Joiner on September 25, 2006, and originally issued a report finding maximum medical improvement on July 3, 2006, and assessing a permanent impairment rating of seven percent. In January 2007, the Division sent Bader a request for a letter of clarification asking if Davis' assessment changed Bader's impairment rating assignment. In response, Bader issued a letter of clarification maintaining his seven percent rating, with a request to re-examine Joiner's right shoulder. After having conducted the requested re-examination, Bader issued an addendum, again maintaining his seven percent rating.

In May 2007, a second letter of clarification was sent to Bader asking him for the right shoulder range-of-motion measurements taken on February 13, 2007, and informing him that the date of statutory maximum medical improvement was July 10, 2006. Bader issued a second letter of clarification in June 2007, once again maintaining his seven percent rating. The letter included a new form DWC-69 indicating a seven percent impairment rating as of July 10, 2006, the statutory date of maximum medical improvement.[4]

---

[3]"Designated doctors" are doctors appointed by mutual agreement of the parties or by the Division to recommend a resolution of a dispute as to the medical condition of an injured employee. TEX. LAB. CODE ANN. § 401.011(15) (West Supp. 2011); *see* 28 TEX. ADMIN. CODE ANN. §§ 130.1, 130.6 (West, Westlaw current through 2011) (Tex. Dep't of Ins., Div. of Workers' Compensation, Designated Doctor Examinations for Maximum Med. Improvement and/or Impairment Ratings).

[4]To certify maximum medical improvement and assign an impairment rating, the certifying doctor makes a written "Report of Medical Evaluation." 28 TEX. ADMIN. CODE ANN. § 130.1(d) (West, Westlaw current through 2011) (Tex. Dep't of Ins., Div. of Workers' Compensation, Certificate of Maximum Med. Improvements & Evaluation of

3

There is nothing in the record to indicate Davis was advised, as was Bader, of the maximum medical improvement date of July 10, 2006.[5]   Davis did not issue an amended report of medical evaluation based on this date.

The dispute resulting in the instant appeal centered on the competing impairment ratings from Bader and Davis.   Bader's seven percent rating is based on Joiner's condition as of July 10, 2006, versus Davis' thirty-four-percent rating based on Joiner's condition as of July 5, 2006.[6]

A contested case hearing was held in October 2007, where the issue was, "What is the Claimant's impairment rating?"   The Division's hearing officer found that Bader's assigned impairment rating of seven percent was not supported by the preponderance of the evidence, but that Davis' impairment rating of thirty-four percent was made in accordance with the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment and is supported by a preponderance of the evidence.   The hearing officer concluded that Joiner's impairment rating was thirty-four percent.

The SORM appealed the hearing officer's determination to the Division Appeals Panel. The Appeals Panel reversed the hearing officer's finding that Joiner's impairment rating was

---

Permanent Impairment).   A report of medical evaluation is comprised of a one-page Division-generated form (the "DWC-69"), and the accompanying medical narrative.   *In re Xeller*, 6 S.W.3d 618, 621 & n.3 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding).

[5]The hearing officer presiding over the contested case hearing made a finding that the parties (Joiner and the State Office of Risk Management (SORM)) stipulated that Joiner reached maximum medical improvement on July 10, 2006.

[6]The clinical MMI date listed later by Davis was July 17, 2006.

4

thirty-four percent, and found that it was seven percent, based on Bader's report. The Appeals

Panel reasoned:

> In the instant case, the hearing officer determined that the claimant's IR is 34% as assigned by Dr. D based on an MMI date of July 17, 2006. As previously mentioned, the parties stipulated that the date of MMI was July 10, 2006. Because Dr. D assigned an IR that was not based upon the claimant's condition on the stipulated date of MMI, July 10, 2006, the 34% IR assigned by Dr. D cannot be adopted. Accordingly, we reverse the hearing officer's determination that the claimant's IR is 34%.

Joiner appealed the decision of the Appeals Panel to the district court. The district court

rendered judgment in favor of Joiner and ordered the SORM to adopt the impairment rating of

thirty-four percent given by her treating physician, and as found by the Texas Workers'

Compensation Commission hearing officer.[7] The SORM appeals the decision of the trial court.

We affirm that decision.

---

[7]The trial court issued findings of fact and conclusions of law. The findings of fact are as follows:

    1.    Ms. Elaine E. Banks Joiner (Ms. Joiner) was employed by the Department of Health and Human Services when she sustained an injury during the course and scope of her employment on July 5, 2004.

    2.    She injured her right knee and right shoulder in the course and scope of her employment and had surgery on both compensable body parts.

    3.    The Department of Insurance — Division of Workers' Compensation (the Department) alleged that the parties stipulated to the date of July 10, 2006 as the statutory date of maximum medical improvement (MMI).

    4.    Ms. Joiner testified that Regina Cleave, Benefit Review Officer for the Department, stated that her MMI date was July 10, 2006, thus, she did not stipulate to such.

    5.    Ms. Joiner's treating physician, Brent Davis, M.D. (Dr. D.), examined her on July 17, 2006.

6. Dr. D. issued a report finding clinical MMI date of July 17, 2006 and assessing a permanent impairment rating (IR) of 34% for Ms. Joiner.

7. The Department appointed Elliot Bader, M.D. (Dr. B.), as the designated doctor.

8. Dr. B. examined Ms. Joiner on September 25, 2006.

9. Dr. B. originally issued a report finding statutory MMI on July 3, 2006 and assessing a permanent impairment rating (IR) of 7%.

10. Ms. Regina Cleave, Benefit Review Officer for the Department, sent a letter dated May 23, 2007, to Dr. B. informing him that "the insurance carrier confirmed that the date of statutory MMI is July 10, 2006."

11. Dr. B. amends his report to reflect the changed MMI date to July 10, 2006.

12. Dr. D. is not notified by the Department of the confirmation of statutory date of July 10, 2006, thus, he is not afforded an opportunity to change or amend his report.

13. The designated doctor was given an opportunity to amend his report to reflect the allegedly stipulated-to MMI date of July 10, 2006.

14. The treating doctor did not have an opportunity to amend his report to reflect the allegedly stipulated-to MMI date of July 10, 2006.

15. The treating doctor's examination took place on the "as of" date of 2 years and 12 days whereas the designated doctor's examination took place months after has [sic] stated "as of" date.

16. A contested case was held on October 2, 2007, in Austin, Texas.

17. The Department's hearing officer, Gary L. Kilgore, found that the 34% IR assessed by Dr. D. was made in accordance with the Guides to the Evaluation of Permanent Impairment, fourth edition and is supported by a preponderance of the evidence.

18. The insured appealed this decision pursuant to Texas Workers' Compensation Act, Tex. Lab. Code Ann. § 401.001 *et seq.* (1989 Act).

19. The Appeals Panel decided that Dr. D.'s report could not be considered because of the incorrect MMI date of July 17, 2006.

20. The Appeals Panel adopted Dr. B.'s amended report, certifying the date of MMI as July 10, 2006, and assigning a 7% IR.

21. Any of the above Findings of Fact which may later be determined to be Conclusions of

6

Law shall be deemed as such.

The conclusions of law are as follows:

1. In a trial to the court without a jury, the court in rendering its judgment on an issue described by Section 410.301(a) shall consider the decision of the appeals panel. TEX. LAB. CODE §410.304(b).

2. This dispute involves compensability or eligibility for or the amount of income benefits, therefore, the review of the Commission appeals panel decision is a modified de novo standard.

3. The party appealing the decision on an issue described in Section 410.301(a) has the burden of proof by a preponderance of the evidence.

4. Evidence of the extent of impairment is limited to that presented to the Division absent a finding that the claimant's condition has substantially changed, and the court can only adopt a specific impairment rating arrived at by one of the doctors in the case.

5. The court, as trier of fact, is to consider the Division's decision and it is not required to accord the decision any particular weight.

6. The opinion of the designated doctor regarding impairment is accorded no special weight.

7. Rule 130.1(c) 3 states that "assignment of an impairment rating for the current compensable injury shall be based on the injured employee's condition as of the MMI date considering the medical record and the certifying examination."

8. It is disputed that the parties stipulated to the MMI date as of July 10, 2006.

9. Rule 130.1 does not state an evidentiary consequence of a misstated MMI date. There is no statutory basis for the Appeals Panel to disregard evidence, i.e., the treating doctor's report, based on a treating doctor misstating the MMI date by 7 days.

10. Tex. Lab. Code §410.305 and 306 state that the Texas Rules of Evidence and case law govern the legal sufficiency of evidence. Thus, a physician opinion of the extent of those impairments as of 2 years and 12 days after the accident is evidence of the extent of those impairments as of 2 years and 5 days.

11. The Department's hearings officer found the treating doctor's IR by the preponderance of the evidence.

12. Any of the above Conclusions of Law which may be determined to be Findings of Fact shall be deemed as such.

7

## II.    Standard of Review

The Texas Workers' Compensation Act provides that a party who has exhausted its administrative remedies and is aggrieved by a final decision of the appeals panel may seek judicial review of the appeals panel decision.    TEX. LAB. CODE ANN. § 410.251 (West 2006 ); *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000).    Issues regarding compensability or eligibility for benefits may be tried to a jury and are subject to a modified de novo review.    TEX. LAB. CODE ANN. § 410.301 (West 2006); *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516–18 (Tex. 2007); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 528 (Tex. 1995).    Review is limited to the issues that were before the Commission appeals panel; however, the fact-finder does not simply review the appeals panel decision for reasonableness, but decides the issues independently based on a preponderance of the evidence.    TEX. LAB. CODE ANN. §§ 410.302–.303 (West 2006); *Garcia*, 893 S.W.2d at 531.    In this case, the trial court correctly applied a modified de novo standard of review to the issue of Joiner's impairment rating.[8]

Under this standard, the trial court is informed of the Commission's decision.    *Garcia*, 893 S.W.2d at 528.    The trial court is not required to accord that decision any particular weight, however.    *Id.* at 515.    In addition, the designated doctor's opinion regarding impairment is accorded no special weight.    *Id.*; *Abilene Indep. Sch. Dist. v. Marks*, 261 S.W.3d 262, 268 (Tex. App.—Eastland 2008, no pet.).

---

[8]The Texas Supreme Court has determined that an appeal challenging an impairment rating is subject to review under Section 410.301 of the Texas Labor Code because it "directly affects eligibility for and the amount of benefits due." *Rodriquez v. Serv. Lloyds Ins. Co*., 997 S.W.2d 248, 253 (Tex. 1999).

8

Evidence of the extent of impairment is limited in the trial court to that presented to the Commission unless the trial court finds the claimant's condition has substantially worsened. *Garcia*, 893 S.W.2d at 515. Finally, the fact-finder is required to adopt the specific impairment rating arrived at by one of the physicians who examined the claimant.[9] *Id.*; TEX. LAB. CODE ANN. § 410.306(c) (West Supp. 2011); *State Office of Risk Mgmt. v. Rodriguez*, 355 S.W.3d 439, 442 (Tex. App.—El Paso 2011, pet. filed). The party appealing the impairment rating decision has the burden of proof by a preponderance of the evidence. *See* TEX. LAB. CODE ANN. § 410.303; *Marks*, 261 S.W.3d at 268.

The trial court made findings of fact and conclusions of law. The SORM does not specifically challenge any of the trial court's findings of fact; rather, it challenges the ultimate conclusion of law that Joiner's impairment rating was thirty-four percent.

We review a trial court's conclusions of law de novo. *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 727 (Tex. App.—Corpus Christi 2006, pet. denied). Conclusions of law may not be challenged for factual sufficiency, but are reviewed to determine their correctness based upon the facts. *Rischon Dev. Corp. v. City of Keller*, 242 S.W.3d 161, 166 (Tex. App.—Fort Worth 2007, pet. denied); *Nat'l Union Fire Ins. Co. v. Burnett*, 968 S.W.2d 950,

---

[9]An injured worker qualifying for impairment income benefits receives seventy percent of his average weekly wage. TEX. LAB. CODE ANN. § 408.126 (West 2006). These benefits are available from the date MMI is certified and continue for three weeks for every percentage point of impairment. TEX. LAB. CODE ANN. § 408.121(a) (West 2006); *Fulton v. Associated Indem. Corp.*, 46 S.W.3d 364, 366 (Tex. App.—Austin 2001, pet. denied). If the impairment rating is fifteen percent or greater, the employee may qualify for supplemental income benefits, which provide long-term disability compensation. TEX. LAB. CODE ANN. § 408.142(a) (West 2006).

953 (Tex. App.—Texarkana 1998, no pet.). We will uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *City of Houston v. Cotton*, 171 S.W.3d 541, 546 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

## III. Issues on Appeal

On appeal, the SORM argues the Davis report is invalid because (1) it does not reflect Joiner's condition as of the stipulated date of MMI, (2) it reflects Joiner's condition past the cut-off of statutory MMI, and (3) Davis did not calculate his impairment rating in accordance with the AMA Guides to the Evaluation of Permanent Impairment. The SORM further complains that (1) the trial court was obligated to adopt the seven percent impairment rating certified by Bader, and (2) the trial court did not have jurisdiction over the date of maximum medical improvement.

## IV. Analysis

### A. Validity of Davis' Certification—Maximum Medical Improvement

The SORM initially complains that Davis' certification is invalid because it fails to reflect the stipulated date of maximum medical improvement. The impairment rating for the current compensable injury must be based on Joiner's condition as of the MMI date considering the medical record and the certifying examination.[10] 28 TEX. ADMIN. CODE ANN. § 130.1(c)(3)

---

[10]The preamble of Rule 130.1(c)(3) clarifies that the IR must be based on the injured worker's condition as of the date of MMI and should not be based on changes in the injured employee's condition occurring after that date, such as

(West, Westlaw current through 2011) (Tex. Dep't of Ins., Div. of Workers' Compensation, Certificate of Maximum Med. Improvements & Evaluation of Permanent Impairment); *Tex. Builders Ins. Co. v. Molder*, 311 S.W.3d 513, 520 (Tex. App.—El Paso 2009, no pet.).

Davis' report of July 26, 2006, indicated that he examined Joiner on July 17, 2006. The report reflects maximum medical improvement on July 5, 2006, with an impairment rating of thirty-four percent.[11] Bader's report of September 25, 2006, concluded that Joiner reached maximum medical improvement on July 3, 2006, and had an impairment rating of seven percent. Bader later supplemented his report to indicate a maximum medical improvement date of July 10, 2006. The SORM contends that the parties stipulated to the MMI date of July 10, 2006, and therefore any assignment of impairment rating must be made as of that date. 28 TEX. ADMIN. CODE § 130.1(c)(3) (impairment rating must be based on condition as of MMI date); *see also Pac. Employers Ins. Co. v. Brown*, 86 S.W.3d 353, 360 (Tex. App.—Texarkana 2002, no pet.).

On appeal, neither party claims July 10, 2006, was not the statutory MMI date for Joiner.[12] Rather, the SORM contends the Davis report is invalid on its face because it is not based on

---

when the injured employee's condition changes as a result of surgery that takes place after the date of MMI. *See Appellant v. Respondent*, No. 072242, 2008 WL 687180 (Tex. Work. Comp. Com. Feb. 13, 2008) (discussing Rule 130.1(c)(3)).

[11]Throughout its brief, the SORM indicates that Davis' report found Joiner reached clinical maximum medical improvement on July 17, 2006. The SORM fails to mention Davis' report, dated July 26, 2006, which indicates an MMI date of July 5, 2006. For purposes of our legal analysis, the difference in the two dates is insignificant.

[12]The Division hearing officer found that the parties stipulated at the contested case hearing that Joiner's date of MMI was July 10, 2006. Joiner did not appeal that finding of fact to the Division Appeals Panel, so Joiner's date of MMI cannot be disputed on judicial review. *See* TEX. LAB. CODE ANN. § 410.302(b) (trial limited to issues decided by appeals panel and on which judicial review sought). Nevertheless, the trial court found that "Regina Cleave, Benefit

11

Joiner's MMI date of July 10, 2006. The SORM further contends that because the report is invalid, it cannot be considered, and is thus no evidence of Joiner's impairment rating. This is a question of statutory interpretation, and is thus a question of law: is the consequence of noncompliance with 28 TEX. ADMIN. CODE § 130.1(c)(3) a complete disregard of the noncompliant impairment rating? In other words, when a physician's report of impairment fails to base the claimant's condition on the date of maximum medical improvement (in this case, July 10, 2006), is that impairment rating invalid and not worthy of consideration as evidence?

According to the Division, the rule is to be so interpreted. *See Appellant v. Respondent*, Appeal No. 071398, 2007 WL 4139223, at *3 (Tex. Work. Comp. Com. Sept. 28, 2007) ("In the instant case, the hearing officer determined that the claimant's IR is 9% as assigned by Dr. B, but it is based on a MMI date of July 19, 2006, which is different than the July 26, 2006, MMI date stipulated by the parties. Accordingly, we reverse the hearing officer's determination that the claimant's IR is 9% as assigned by Dr. B as not being based on the claimant's condition as of the July 26, 2006, date of MMI."); *Appellant v. Respondent*, Appeal No. 070867, 2007 WL 2446083, at *2 (Tex. Work. Comp. Com. July 6, 2007) ("Because Dr. L. assigned an IR that was not based upon the claimant's condition on the agreed date of MMI, January 10, 2005, the 2% IR assigned by Dr. L cannot be adopted."); *Appellant v. Respondent*, Appeal No. 070782, 2007 WL 2446080, at

---

Review Officer for the Department, stated that [Joiner's] MMI date was July 10, 2006, thus, she did not stipulate to such." The trial court concluded that "[i]t is disputed that the parties stipulated to the MMI date as of July 10, 2006." Because Joiner did not appeal the issue of the correct MMI date to the Appeals Panel or to the trial court, this issue has not been preserved for our review. We thus do not address this issue further.

12

*2 (Tex. Work. Comp. Com. June 25, 2007) ("Because Dr. L assigned an IR that was not based on the claimant's condition upon the stipulated date of MMI, August 17, 2006, the 10% IR assigned by Dr. L cannot be adopted."); *Appellant v. Respondent*, Appeal No. 040514, 2004 WL 1567412, at *3 (Tex. Work. Comp. Com. Apr. 28, 2004) ("Because the treating doctor's certification of IR was not based upon the claimant's condition on the stipulated date of MMI, February 9, 2001, it cannot be adopted.").

Because the issue before us involves a question of statutory interpretation, it is a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We construe administrative rules in the same manner as statutes. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). We defer to an agency's interpretation of its own rules and limit our review to a determination of whether the interpretation is plainly erroneous or inconsistent with the text of the rule or underlying statute. *Vista Healthcare, Inc. v. Tex. Mut. Ins. Co.*, 324 S.W.3d 264, 272 (Tex. App.—Austin 2010, pet. denied).

When interpreting statutes, we attempt to ascertain and give effect to the Legislature's intent. *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005). We ascertain that intent by first looking to the plain and common meaning of the statute's words. *Id.*; *Tex. Mut. Ins. Co.*, 214 S.W.3d at 476. We must also view a statute's terms in context and give them full effect. *Tex. Mut. Ins. Co.*, 414 S.W.3d at 476. When examining the provisions within the Texas Workers' Compensation Act, we should keep in mind the comprehensive nature of the Act. *Id.* If the

13

meaning of the statutory language is unambiguous, a court must interpret it according to its terms consistent with other provisions in the statute. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). A court also considers the objective the law seeks to obtain and the consequences of a particular construction. *Id.*

> 28 TEX. ADMIN. CODE § 130.1(c)(3) provides, in pertinent part:

> Assignment of an impairment rating for the current compensable injury shall be based on the injured employee's condition as of the MMI date considering the medical record and certifying examination.

Because Davis' report utilizes July 5, 2005, as the date of maximum medical improvement, rather than July 10, 2006, it technically fails to comply with Section 130.1(c)(3). We do not, however, conclude that this technical lack of compliance should result in the determination that the report cannot be considered as evidence of Joiner's impairment rating on the date of maximum medical improvement—July 10, 2006. The preamble to Rule 130.1(c)(3) states:

> The new language in § 130.1(c)(3) states that an IR assessment for an injured employee must be based on the injured employee's condition as of the MMI date. This change clarifies that IR assessments must be based on the injured employee's condition as of the date of MMI and shall not be based on changes in the injured employee's condition occurring after that date, such as when the injured employee's condition changes as a result of surgery that takes place after the date of MMI.

29 TEX. REG. 2337 (2004). Thus, the intent of the rule is to ensure the impairment rating does not take into account any changes in the employee's condition occurring after the date of maximum medical improvement. Here, there is no evidence to suggest Joiner underwent surgery or suffered

14

any additional physical problems between July 10, 2006 (the date of statutory maximum medical improvement) and July 17, 2006 (the date of Davis' examination of Joiner for purposes of assigning an impairment rating and the date listed on his TWCC-69 report as the clinical maximum medical improvement date). Further, there is no evidence that Joiner's condition changed in any way during the five-day period between July 5, 2006 (the date of maximum medical improvement listed in Davis' July 26 report) and July 10, 2006. Thus, the utilization of Davis' certification as evidence of Joiner's impairment on July 10, 2006, does not frustrate the intent of the rule.[13]

Nothing in the plain language of the rule indicates the intent to render an impairment rating of a certain date as "no evidence" of the impairment rating as of another date. That is, the rule does not state the consequence of noncompliance. To interpret the rule to impose a consequence of noncompliance—the complete omission of Davis' report—which is not included in the rule and which would not effectuate the intent of the rule, is erroneous.

This is especially true in light of the fact that 28 TEX. ADMIN. CODE § 130.1(c)(5) indicates that an impairment rating assigned in violation of subsection (c)(4) is invalid.[14] Clearly, the

---

[13]The intent of the rule is to foreclose the imposition of an impairment rating based on a substantial change of condition after the date of maximum medical improvement. When this occurs, evidence of the extent of impairment is not limited to that presented to the division. *See* TEX. LAB. CODE ANN. § 410.307 (West 2006); *Deleon v. Royal Indem. Co*., No. 03-08-00532-CV, 2010 WL 323128, at *3 (Tex. App.—Austin Jan. 27, 2010, pet. denied) (mem. op.).

[14]28 TEX. ADMIN. CODE § 130.1(c)(5) states:

> If an impairment rating is assigned in violation of subsection (c)(4), the rating is invalid and the evaluation and report are not reimbursable. A provider that is paid for an evaluation and/or report that is invalid under this subsection shall refund the payment to the insurance carrier.

drafters of the rules intended certain impairment ratings to be invalid. However, the drafters failed to include similar language causing an impairment rating which technically fails to comply with Section 130.1(c)(3) to be invalid. If Section 130.1(c)(3) were intended to completely abrogate a report of medical evaluation because it lists an incorrect, retrospective date of maximum medical improvement, the drafters could clearly have indicated this result, just as was done in the case of an impairment rating assigned in violation of subsection 130.1(c)(4).

In *Appellant v. Respondent*, Appeal No. 931125, 1994 WL 31842 (Tex. Work. Comp. Com. Jan. 26, 1994), the claimant contended that Dr. D's assignment of an impairment rating was invalid because he found the date of maximum medical improvement to have occurred on July 8, 1993, the date of his examination, but not the mid-January 1993 statutory date of maximum medical improvement. Thus, according to the claimant, Dr. D's calculation of his impairment rating did not take into consideration his condition on the date of the statutorily imposed maximum medical improvement. The Appeals Panel found no merit to this argument. "Although the Appeals Panel has stated that the 'threshold issue of the existence of MMI cannot be neatly severed from assessment of an 'impairment rating,' and that these issues are 'somewhat intertwined,' . . . we have never held that MMI and IR can never be individually considered and decided." *Id*. at *3 (citation omitted).

> IR can be decided separately from MMI, for example, when MMI is agreed to by the parties or when, as in this case, statutory MMI has been reached. In such cases,

---

28 Tex. Admin. Code § 130.1(c)(4) has to do with range of motion, sensory, and strength testing required by the AMA Guidelines.

16

> it is essential only that MMI be reached before an IR is assigned.

*Id.* Even though the foregoing decision predates the revision of Section 130.1(c)(3), its reasoning is consistent with the 2004 revision to that section. The panel recognized that "[i]n such cases, it is essential only that MMI be reached before an IR is assigned." *Id.* Because the impairment rating was assigned after the date of maximum medical improvement, the "[C]laimant's challenge to Dr. D's IR that Dr. D relied on a later and wrong date of MMI which caused a defective impairment rating is in effect a challenge to the presumptive weight of Dr. D's report." *Id.*

This reasoning applies equally here. In the absence of a statutory basis for interpreting this rule as one of evidence applicable in a district court, it cannot be so interpreted. The Texas Rules of Evidence (and interpretive caselaw) govern issues of evidentiary sufficiency. *See* TEX. LAB. CODE ANN. § 410.305 (West 2006) (Texas Rules of Civil Procedure and any other rules adopted by the Texas Supreme Court control, unless in conflict with this subchapter); TEX. LAB. CODE ANN. § 410.306(b) (West Supp. 2011) (all facts and evidence the record contains are admissible to extent allowed under Texas Rules of Evidence). Here, we find no conflict between the provisions of the Texas Labor Code governing workers' compensation and the Rules of Evidence.

Because there is no statutory basis for the appeals panel or the trial court to disregard evidence, we conclude the trial court was correct in refusing to disregard Davis' report.[15] Further,

---

[15] We are aware of the Houston court's opinion in *Ausaf v. Highlands Ins. Co.*, 2 S.W.3d 363, 366 (Tex. App.—Houston [1st Dist.] 1999, pet. denied), in which the court held that a certification by a treating doctor was

the trial court was correct in concluding Davis' report, including his opinion of Joiner's impairment as of two years after the accident, is evidence of the extent of those impairments as of two years and five days after the accident. We overrule the SORM's initial complaint that Davis' certification is invalid because it fails to reflect the correct date of maximum medical improvement.

**B.      Validity of Davis' Certification—Maximum Medical Improvement Date Past Statutory Deadline**

Next, the SORM claims Davis' certification is invalid because it lists the date of Joiner's clinical maximum medical improvement seven days after the statutory date of maximum medical improvement. We have heretofore determined that the Davis certification technically failed to comply with 28 TEX. ADMIN. CODE § 130.1(c)(3) because it utilizes an incorrect date of maximum medical improvement. We have nevertheless determined that the certification is some evidence of Joiner's impairment on the correct date of maximum medical improvement. The SORM's argument here, that the clinical maximum improvement date is beyond statutory medical

---

invalid and not to be considered because the doctor's report included a prospective maximum medical improvement date. This decision is based on Section 408.123(b) of the Texas Labor Code, which states that the "certifying doctor shall issue a written report certifying that maximum medical improvement *has been* reached." TEX. LAB. CODE ANN. § 408.123(b) (West 2006) (emphasis added). *Ausaf* is distinguished from this case because it involved a prospective date of maximum medical improvement—that is, beyond the date of the claimant's physical examination. Further, the Labor Code provides it will control if there is any conflict between the Rules of Evidence and the Labor Code. TEX. LAB. CODE ANN. §§ 410.305–.306(b). The provisions of Section 408.123(b) of the Labor Code could be interpreted to conflict with the Rules of Evidence. Here, we find no conflict between the provisions of the Labor Code and the Rules of Evidence.

18

improvement, does not change our preceding analysis.[16]   It is simply a different twist on the same issue—whether the Davis certification is not to be considered as evidence of Joiner's impairment because it is based on an incorrect date of maximum medical improvement.   We have determined that Davis' certification was correctly considered as evidence of Joiner's impairment on July 10, 2006.[17]

### C.   Validity of Davis' Certification—Failure to Comply with AMA Guides

---

[16]Because Davis listed the date of maximum medical improvement as July 5, 2006, on his July 26 report, this argument is not factually persuasive.   The form TWCC 69 lists July 17 as the date of maximum medical improvement.   28 TEX. ADMIN. CODE § 130.12(c) (Tex. Dep't of Ins. Div. of Workers' Compensation, Finality of the First Certification of Maximum Medical Improvement and/or First Assignment of Impairment Rating) states:

The certification on the Form TWCC 69 is valid if:

(1)      There is an MMI date that is not prospective;

(2)      There is an impairment determination of either no impairment or a percentage impairment rating assigned; and

(3)      There is the signature of the certifying doctor who is authorized by the Commission under § 130.1(a) to make the assigned impairment determination.

Any argument that the Form TWCC 69 is invalid based on the maximum medical improvement date of July 17 cannot prevail under this section.

[17]Casey Cochran, D.O., testified at trial on behalf of the SORM.   Cochran opined that the Davis certification is invalid because the date of maximum medical improvement was assigned past the statutory date.   Cochran's testimony is consistent with Rule 130.1(b) and (c), which makes statutory maximum medical improvement the latest maximum medical improvement date that can be chosen, and requires the impairment rating be made as of the date of maximum medical improvement.   28 TEX. ADMIN. CODE ANN. § 130.1(b), (c)(3) (West, Westlaw current through 2011) (Tex. Dep't of Ins., Div. of Workers' Compensation, Certificate of Maximum Med. Improvements & Evaluation of Permanent Impairment).   Nevertheless, neither the rule nor Cochran's testimony indicate that a certificate of impairment utilizing an incorrect date of maximum medical improvement cannot be utilized as evidence of impairment on the correct date of maximum medical improvement, where there have been no intervening surgeries or injuries.

19

In its final point of error, the SORM contends Davis' certification of impairment is invalid because it fails to comply with AMA Guides. The AMA Guides to the Evaluation of Permanent Impairment have been incorporated into the Texas Workers' Compensation Act by statute. TEX. LAB. CODE ANN. § 408.124(b) (West 2006) ("the division shall use 'Guides to the Evaluation of Permanent Impairment,' . . . .").

Cochran, the SORM's expert witness in the area of disability and impairment medicine, testified that Davis utilized range of motion measurements in Joiner's right shoulder and right knee that are inconsistent with measurements taken by Bader in September 2006 and in February 2007, and thus, Davis' measurements are invalid. Cochran further testified that Davis incorrectly assigned impairment for flexion and extension in Joiner's knee, which is prohibited by the AMA Guides. Therefore, according to Cochran, Davis' thirty-four percent impairment rating is medically invalid and cannot be adopted.

In its request for review to the appeals panel, the SORM mentions the AMA Guides in order to explain and to provide background for Bader's decision to utilize diagnosis based estimates as opposed to range of motion in order to determine Joiner's impairment rating. Bader believed range of motion values were invalidated through Joiner's alleged submaximal effort. However, the SORM never maintained the position that Davis' range of motion testing was

conducted improperly, thus in some way invalidating his report.[18]  The assertion that Davis improperly assigned impairment for flexion and extension in Joiner's knee was made for the first time at trial.[19]  This assertion was never made to the appeals panel.   The sole argument made to the appeals panel in support of overturning the decision of the hearing officer was the fact that Davis' impairment rating was based upon an incorrect date of maximum medical improvement, and thus could not be adopted.

A district court trial of a workers' compensation case "is limited to issues decided by the appeals panel and on which judicial review is sought.   The pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved."   TEX. LAB. CODE ANN. § 410.302(b).[20]   The appeals panel in this case did not decide the issue of whether Davis' certification was invalid for the reason that it allegedly failed to comply with AMA Guides.[21]

---

[18]Further, the SORM recognizes that the decision to "use the diagnosis based estimates as opposed to range of motion is within the discretion of the evaluating physician and the fact that the treating doctor disagrees with this approach is nothing more than a difference of medical opinion . . . ."

[19]Upon hearing Cochran's testimony on this issue, the trial court indicated:

> You know what's never also been challenged . . . was the fact that Dr. Davis did his report incorrectly.   That -- I mean, that also was a new issue before the Court today.

> . . . . This case is before me on limited de novo review, and so everything that your doctor, Dr. Cochran, just testified to, how is it that I can even consider any of that evidence . . . ?

[20]The SORM utilizes the statutory limitation on issues subject to judicial review to support its argument that the date of maximum medical improvement could not be decided by the trial court.  We agree.  However, the SORM cannot now ignore the statute and raise an issue on appeal that was not decided by the appeals panel, and upon which judicial review was not sought.

[21]In his decision and order, however, the hearing officer specifically found that Davis' impairment rating was made in accordance with the AMA Guides and is supported by a preponderance of the evidence.

Instead, the decision of the appeals panel was limited to the issue of whether Davis' certification was invalid because it contained an incorrect date of maximum medical improvement:

> Because Dr. D assigned an IR that was not based upon the claimant's condition on the stipulated date of MMI, July 10, 2006, the 34% IR assigned by Dr. D cannot be adopted. Accordingly, we reverse the hearing officer's determination that the claimant's IR is 34%.

The SORM argues that it is permitted to rely on this new evidence presented to the trial court because the issue on appeal is broadly stated as, "What is the claimant's impairment rating?" Cochran's testimony, while not presented to the appeals panel, contends the SORM falls within the broad issue of the "claimant's impairment rating," and is thus permissible.[22] We disagree. Evidence of the extent of impairment is limited to what was presented to the Division. *See* TEX. LAB. CODE ANN. §§ 410.306–.307. As explained by the Texas Supreme Court in *Garcia*, 893 S.W.2d at 528:

> [E]vidence of the extent of impairment is limited to that presented to the Commission *unless the court determines that the claimant's condition has substantially changed*. This procedural limitation is akin to those in the rules of civil procedure requiring litigants to disclose witnesses and information at a particular time or be barred from offering that evidence at trial. *See, e.g.*, TEX. R. CIV. P. 215.5. It encourages parties to present relevant evidence during administrative proceedings, thus increasing the accuracy and efficiency of those proceedings. Requiring a party to marshal and disclose evidence diligently does

---

[22]The SORM appears to take a different position on what "issues decided by the appeals panel" means in *Rodriguez*, 355 S.W.3d at 447. In that case, the SORM argued that the claimant's pleadings asked only that the trial court reverse the Division's finding of a five percent permanent impairment, and therefore, failed to preserve error of the Division's decision invalidating a second doctor's impairment rating because the claimant failed to specifically articulate the issue in her pleadings as required under Section 410.302(b) of the Texas Labor Code. *See* TEX. LAB. CODE ANN. § 410.302(b) ("A trial under this subchapter is limited to issues decided by the appeals panel and on which judicial review is sought. The pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved.").

22

not violate the right to trial by jury.

893 S.W.2d at 528 (emphasis added).

Cochran's testimony relating to Davis' alleged noncompliance with the AMA Guides was not presented to the appeals panel, and in accordance with *Garcia*, this Court may not consider such testimony on limited de novo review. The SORM's attempt to broadly define "issue" as basically anything that falls under the umbrella of the "claimant's impairment rating" is inconsistent with the purpose of "encourag[ing] parties to present relevant evidence during administrative proceedings. . . ." *Id.* "Issue," in the context of the Workers' Compensation Act, "is used to refer to disputed matters related to the underlying workers' compensation claim." *Tex. Workers' Compensation Ins. Fund v. Tex. Workers' Compensation Comm'n*, 124 S.W.3d 813, 820 (Tex. App.—Austin 2003, pet. denied).

Because the issue of whether Davis' report was invalid under the AMA Guides was not decided by the appeals panel or the trial court, this Court may not decide this issue for the first time on appeal. TEX. R. APP. P. 33.1; TEX. LAB. CODE ANN. § 410.302(b).

## V.     Conclusion

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

23

Date Submitted:     December 28, 2011
Date Decided:     March 21, 2012