

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

06-19-00055-CV
_____

JOE D. BOUCHER, Appellant

V.

MARK A. THACKER, Appellee

On Appeal from the County Court at Law No. 1
Smith County, Texas
Trial Court No. 65836

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

# OPINION

The case involves the imploding partnership between Joe D. Boucher and Mark A. Thacker in their firm, Sinclair & Wright Architects (the Firm). When it became clear that the Firm had acquired more debt than could be paid, Boucher and Thacker discussed the Firm's dissolution. During these dissolution discussions, Boucher sought to retire, but Thacker withdrew from the Firm before the effective date of Boucher's retirement. Thacker sued Boucher for breach of the partnership agreement and breach of fiduciary duties as part of the winding up and dissolution of the Firm, prompting Boucher's crossclaims for retirement money, among other things. The trial court granted judgment for Thacker, awarded him $49,500.00 in attorney fees, and entered a take-nothing judgment against Boucher.

On appeal, Boucher argues that the trial court erred (1) in failing to award Boucher any retirement or the value of his interest in the Firm, (2) in failing to award Boucher damages for Thacker's breach of fiduciary duty, and (3) by awarding attorney fees against him because Thacker did not secure an award of actual damages.[1] Thacker cross-claimed, arguing that the trial court erred by failing to award him any actual damages for Boucher's breach of contract.

Because the trial court entered a take-nothing judgment on all of Boucher's claims against Thacker, we interpret Boucher's first two points of error as questioning whether the evidence was factually sufficient to support the trial court's rejection of his claims. We find the evidence factually sufficient to support the take-nothing judgment and conclude, as a result, both that

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

2

(1) Boucher was not entitled to retirement or the value of his interest in the Firm and (2) the trial court did not err in failing to award damages to Boucher. Even so, because we find that Thacker was not entitled to an award of attorney fees absent either an award of damages or a contractual provision providing for attorney fees, we sustain Boucher's last point of error. We dismiss Thacker's cross-appeal, which argues that the trial court erred in failing to award actual damages, because he failed to file a separate notice of appeal. As a result, we reverse the trial court's award of attorney fees and render judgment that Thacker is not entitled to attorney fees. We affirm the remaining portions of the trial court's judgment.

## I. Factual and Procedural History

### A. The Formation and Governing Documents of The Firm

Thacker, Boucher, Carroll M. Sinclair, and Garland C. Wright, the Firm's original partners, entered into a Revised Partnership Agreement, effective as of December 31, 2000 (the Agreement). The Agreement, which Thacker and Boucher both agreed controlled their dispute, provided,

> 2.02 Additional Contributions to Capital. Whenever required in the business of the Partnership, capital shall be contributed by the partners in the proportion in which they share in the Partnership profits and losses as determined by paragraph 2.07 of this Agreement.
>
> . . . .
>
> 2.07 Profits and Losses. Any net profits or losses that may accrue to the Partnership shall be distributed to or borne by the partners in proportion to their profit/loss percentage . . . .
>
> 2.08 Profits of Deceased or Terminated Partner. On the death of a partner, or on the withdrawal, retirement, or expulsion of a partner as provided in this Agreement, such partner shall be entitled to his share of the profits and losses earned up to the date of his death, withdrawal, retirement or expulsion and such partner's distributive share of the future profits and losses of the Partnership shall

3

be divided among the remaining partners in accordance with their percentage interests in such profits and loses as determined in Paragraph 2.07 of this Agreement. . . .

. . . .

3.06    Non-Competition, Restrictive Covenant and Confidentiality. . . . Upon the termination of a partner's interest in the Partnership, whether voluntary or involuntary, the terminating partner shall immediately return to the Partnership all files, log books, data, records and documents, and all copies thereof, in the partner's possession or control concerning or relating to, directly or indirectly, the business of the Partnership. Further, during the two-year period following the partner's termination, the terminating partner shall not make a direct contact with or a solicitation of any person or company who is a customer of the Partnership at the time of termination or any person or company who has been a customer of the Partnership at any time during the two years preceding the termination, nor accept a contact for the purpose of engaging in an activity that is in direct competition in any manner whatsoever with the business of the Partnership. "Terminating partner" refers to a withdrawing, retiring, disabled or terminated partner.

. . . .

4.01    Retirement or Withdrawal of Partner. Any partner may voluntarily retire or withdraw from the Partnership at any time by giving written notice to the other partners of his intention to so retire or withdraw.

4.02    Duty to Purchase Terminated Interest. The duty to purchase a terminated interest shall be governed by the following:

> 4.02.2 Other Partners. Upon the retirement or withdrawal of any other partner, the remaining partners shall continue the Partnership business and shall purchase the interest of the retiring or withdrawing partner in the assets and goodwill of the Partnership by paying to such partner or his personal representative the value of such interest determined as provided in Paragraph 4.05 of this Agreement. The purchasing partner or partners shall pay the amount determined under Paragraph 4.05 to the retiring or withdrawing partner or to his personal representative . . . . [I]n no event shall the annual aggregate of . . . payments to any one retired partner exceed 5% of the annual gross fee or revenue of the Partnership . . . .

. . . .

4

4.05 _Purchase Price of Partnership Interest_. The value of each partner's interest in the Partnership shall be equal to the average annual gross fees or revenue of the Partnership as reported in the Partnership federal income tax return for the three (3) complete accounting years immediately preceding the date of valuation multiplied by such partner's then equity ownership in the Partnership. . . .

. . . .

4.09 _Dissolution_. On dissolution of the Partnership other than is provided in Paragraphs 4.01 through 4.05 of this Agreement, the affairs of the Partnership shall be wound up, the assets of the Partnership liquidated, the debts paid, and the surplus divided among the partners in proportion to their profit/loss percentage for the year of dissolution as indicated on Exhibit "A" attached hereto and made a part hereof for all purposes.

4.10 _Files and Sketches_. On any dissolution of the Partnership, the partner who has usually rendered professional services for a particular client shall be entitled to such client's files and sketches unless the client requests a different disposition be made thereof. In addition, on any dissolution of the Partnership, each of the partners shall be entitled to copies of any or all of the files and sketches of the Partnership, all at the expense of the Partnership before dissolution.

After Sinclair and Wright both retired, Thacker and Boucher each acquired a fifty percent interest in the Firm and filed Articles of Conversion in 2005 reorganizing the Firm as a professional limited liability company. Even so, both parties testified at trial that the Agreement, which labeled the firm as a partnership, still controlled and governed all Firm matters and the outcome of this lawsuit.

**B.      Boucher and Thacker's Souring Relationship Leads to Dissolution**

In 2014, Boucher and Thacker's relationship began to sour. Thacker testified that the Firm was in debt, bills were racking up, and Boucher, who was allegedly not pulling his weight, "was not willing to interject additional capital into the firm." According to Thacker, "there was no other

5

choice but to dissolve the firm." While Thacker testified that dissolution discussions began in the fall of 2014, Boucher testified that they started in January 2015.[2]

According to Boucher, Thacker addressed a letter to him that was titled "Dissolution of Sinclair & Wright Architects" before February 10, 2015. The letter, which listed many considerable debts together with those below, said,

> As of February 10, 2015, it is now apparent the firm can no longer operate under a significant debt and no substantial contracts to be signed. Currently there is less than $5,000 cash in the bank. With no agreement in place between [Thacker] and [Boucher] to continue operation, the following must be addressed in order to wind down and conclude outstanding activities and obligations:
>
> 1. Debt to Garland . . . $120,000.00. . . .
>
> . . . .
>
> 10. . . . . "$32,359.15 loan . . . .
>
> . . . .
>
> 33. Reasons for Ceasing Operation . . . .

The dissolution discussions presented several options on how to proceed, breeding room for disagreement as shown by the Firm's February 13, 2015, minutes, which read,

> **Discussion**
> [Boucher] has met with his attorney, reviewed the current partnership agreement, discussed retirement, withdrawal from the firm, and closing of the firm. [Boucher] and his attorney believes [sic] if he withdraws he is leaving a lot of money on the table.
>
> **Retirement:**
> [Boucher] will get paid per the agreement. Approximately $ 300,000.

---

[2]On February 4, 2015, Thacker sent an email to Boucher indicating that the Firm would either agree to dissolve or would let one partner withdraw while the other remained.

6

> [Thacker] said he can't afford that and it doesn't make sense due to the economic situation of the firm. . . . [Thacker] said the option of closing the firm is still on the table. [Boucher] didn't respond. . . .
>
> **Withdrawal from Firm:**
> [Boucher] said, again, if I withdraw from [the Firm] I am leaving money on the table.
> [Thacker] to pay all the debt of the firm . . . . If [Thacker] doesn't accept [Boucher's] offer then [Boucher] retires and attorneys hash things out . . . .
>
>      . . . .
>
> **Firm's Current Status:**
> There is not enough money in the bank to pay bills due February 15th. [Thacker] suggested they split the amount of $5,245.05 . . . .
>
> **Decision**
> . . . No decision was made today. . . .
> Meeting scheduled for Monday, February 16, 2015 at or around 11 AM.

Boucher testified "Yes, we did, in fact, close the firm."

The agreement to dissolve the Firm was memorialized in the Firm's February 16 minutes after its morning meeting. According to the minutes, Boucher agreed that accounts receivable and debt would both be split evenly. Even so, Boucher delivered to Thacker in the afternoon his one-sentence "written notice of [his] intention to retire from the firm . . . effective at the close of day of February 20, 2015."[3]

In response to Boucher's letter, Thacker withdrew from the Firm. In a February 17 letter, Thacker said,

> I concur with your decision that this partnership should be terminated.
>
> As President of this partnership/PLLC, and pursuant to Paragraph 4.01 of the . . . Agreement dated December 31, 2000, you are hereby advised effective on this date

---

[3]Boucher admitted that his retirement notice was sent after the February 16 meeting.

7

> I am voluntarily withdrawing from the partnership. The increasing net losses of the partnership as you have been continuously aware of dictate this action. . . . I have begun the winding up and dissolution of Sinclair & Wright Architects. My reasons for taking this action are primarily due to the slowdown of business over the last year which is now resulting in monthly net losses for us both.

The letter also referenced obligations and responsibilities contained in the Agreement, as follows:

> The partnership agreement also requires under Paragraph 3.05 that "[e]ach partner shall protect the other partners and partnership from all costs, claims and demands in relation to the partner's separate obligations . . . " I have tried diligently to get your cooperation in negotiating and paying our joint promissory note . . . . Your refusal to timely meet with me and pay [this debt] violates this provision of the agreement regarding our separate debts. Due to your lack of cooperation and refusal to meet with me on numerous occasions and your refusal to negotiate and pay the debt . . . , the deadline has passed again for paying a substantially reduced amount. . . .

> You have mentioned on several occasions about an expectation by you of retirement monies to be paid by me for your retirement. There are no retirement funds. You and I never set aside any monies for retirement. Both of us are withdrawing from the partnership so there will be no retirement money for you or for me.

> Paragraph 2.08 of the Partnership Agreement states that both of us are entitled to our share of profits and the losses earned up to the date of the termination. I am declaring the date of termination to be today, February 17, 2015. Unfortunately, my initial assessment of the assets and the liabilities of the partnership indicate you and I will share in the losses incurred through today as it appears there will be no profits once all debts of the partnership are paid.

> Paragraph 4.09 dictates the procedure for winding up the partnership. We should work together so we can minimize the expenses of dissolving the partnership. . . .

Boucher testified that Thacker had the right to withdraw and understood that Thacker was withdrawing when he delivered this letter on February 17. He added, "After I retire and he withdraws, I'm the partner."

Boucher responded to Thacker's withdrawal notice in a February 19 email stating,

8

> While I am in agreement with many of the points in your dissolution plan, I do not agree to all of them. In addition, I need some additional time to come to the office, look at the physical assets and then make an offer for what I want to purchase/take with me. Please understand that although I have tendered my notice of retirement, I am still a 50% owner of the company and have just as much right to make decisions and deal with the dissolution as you do. Unless and until you acquire my ownership interest, I am still an owner.

Boucher came to the Firm on that day to split and take control of some of the Firm's valuable physical assets. Boucher testified that he took those assets because he recognized Thacker's withdrawal. According to Thacker, dissolution was complete that day when the Firm's physical assets were split.

When asked when his ownership interest in the Firm ended, Boucher testified, "There was on the 18th or 19th, and I wasn't retired officially until the 20th, so I had one more day of ownership." He agreed that he retired after disposal of the Firm's physical assets and informed the Smith County Appraisal District, "As of February 20th, 2015, Sinclair & Wright is no longer in business." Boucher and Thacker met again on February 24 as shown by minutes discussing their various obligations. An Agreement signed by Boucher on February 26 discussed these obligations made "[i]n an effort to wind down the business of the dissolved Sinclair & Wright Architects."

Both parties continued to work after parting ways. Thacker, who believed that the noncompetition provisions of the Agreement were void because of dissolution, started his own firm in March called "Mark A. Thacker, AIA." He altered the Firm's lease, began leasing the office for his new business, and appropriated the Firm's telephone number and business fax for the venture. This upset Boucher who testified that Thacker did not split the goodwill, book of business, or customer lists of the Firm. Boucher also introduced an invoice showing that Thacker

9

did business in the name of his new company before February 20. According to Boucher, Thacker was continuing the Firm's business through his new company in violation of the noncompetition provisions of the Agreement.

Boucher started his own company in June 2015. He completed a project for the City of Marshall, one of the Firm's previous clients. According to Boucher, he did not violate any noncompetition agreement because he was paid though another company for serving as a liaison for the project. Boucher testified that he did not bill former customers for work during or after February 2015.

At trial, Thacker testified that no formal articles of dissolution for the Firm had been filed because the Firm still had outstanding debts. The Firm had also acquired an outstanding debt to the IRS, but the amount of that debt was unknown at the time of trial. According to Thacker, while he paid half of the Firm's bills, Boucher paid none of them, except for the Garland debt. Boucher claimed he was owed retirement money under the Agreement, but Thacker testified that, under the Agreement, Boucher's retirement could not exceed five percent of annual gross fees or revenue and five percent of annual gross "post 2016" was "zero dollars."

A. The Lawsuit

Thacker sued Boucher for breach of the Agreement, breach of fiduciary duty in winding up the Firm's business, and several violations of partner obligations listed in Chapter 152 of the Texas Business Organizations Code. Among other claims, Thacker alleged Boucher breached the Agreement by abandoning the Firm at the time of dissolution and failing to pay all obligations, losses, and debts of the Firm. Thacker alleged that Boucher's actions resulted in payment of

10

unnecessary interest on loans. He sought actual damages and prayed for attorney fees for breach of the Agreement.

Boucher filed a counterclaim against Thacker for breach of the Agreement, breach of fiduciary duty, and conversion of the Firm's goodwill, intellectual property, files, equipment, address, telephone number, and fax number. Among other things, Boucher alleged Thacker breached the noncompetition provision by continuing to operate the Firm under his new business name and by failing to pay the value of Boucher's ownership interest. Boucher claimed that he was owed $306,728.33 for his retirement and attorney fees.

## B.    The Trial Court's Findings of Fact and Conclusions of Law

The trial court rendered judgment for Thacker on his claims and ordered Boucher to pay $49,500.00 in attorney fees. Even so, Thacker received no economic damages.[4] The trial court also entered a take-nothing judgment on Boucher's cross-claims. The trial court entered thorough findings of fact and conclusions of law. The trial court's factual findings included:

- "Discussions between Thacker and Boucher about dissolving the firm began no later than December of 2014."

- "The firm laid off the last of its longtime technical employees in January of 2015." "There were no new contracts with [the Firm] for architectural work pending in 2015."

- "Thacker and Boucher sought advice from Attorney Rick Lottman in an email on February 4, 2015 regarding dissolution documents and payment of firm debts."

---

[4]We note that Boucher asked for disclosure on Thacker's calculation of economic damages. Thacker did not respond before trial but asked the court for leave to supplement the answer during trial. Boucher argued that without the supplementation, Thacker would be unable to prove damages. The trial court's ruling implies that leave to supplement the record was not granted.

11

- "On February 10, 2015 Thacker gave Boucher notice of the termination of the partnership."

- "On February 17, 2015 Thacker gave Boucher notice that he (Thacker) was withdrawing from the partnership."

- "There is evidence through emails, a letter and minutes that Boucher agreed to a dissolution of the firm in February of 2015."

- "Thacker began the dissolution and winding down of the partnership no later than February 10, 2015."

- "On February 16, 2015 Boucher and Thacker again meet according to minutes of the meeting in which details were set out regarding how the dissolved firm would handle the payments of debts and how to handle clients of [the Firm]."

- After that meeting, Boucher met with his lawyer and submitted a "letter to Thacker announcing that he intends to retire from [the Firm] on February 20, 2015."

- "On February 24, 2015, a written agreement was signed by both Boucher and Thacker stating that Boucher and Thacker mutually agreed to wind down the business of the dissolved [Firm]."

- "Following the agreement to dissolve the partnership, Joe Boucher did not pay his portion of the debts of the outstanding debts of the firm."

- "Following the agreement to dissolve the partnership, Joe Boucher and Mark Thacker agreed to split the physical assets of the partnership."

- Boucher took physical assets of the partnership after announcing his retirement.

- Boucher sought work as an architect from the City of Marshall.

- "Mark Thacker formally withdrew from the partnership on February 17, 2015 after previously stating his termination of the partnership of February 10, 2015."

- "When Mark Thacker withdrew from the partnership, there was only one remaining partner "(Boucher) and Boucher had already announced his coming retirement."

- Boucher refused to pay debts in violation of the partnership agreement he sought to enforce.

12

- "Boucher's retirement notice made February 20, 2015 as the effective date. On February 20, 2015, there were no remaining partners in [the Firm]."

- There was insufficient evidence to support Boucher's claim for loss of goodwill.

- At the time of winding up and dissolution, the Firm was in debt and had no funds to pay their debts so there was no net profit.

- The litigation was based on a suit on written contract.

Among other things, the trial court concluded that (1) Boucher breached the Agreement in general, (2) Boucher breached the Agreement by not paying his part of the debts in violation of Section 152.202 of the Texas Business Organizations Code, (3) Boucher did not participate in winding down the business in violation of the Agreement and Section 152.205 of the Texas Business Organizations Code, (4) Boucher did not honor his fiduciary duty in winding down the Firm, which violated Section 152.204 of the Texas Business Organizations Code, (5) there was no breach of fiduciary duty on Thacker's part, (6) Boucher presented no credible evidence that Thacker owed $306,728.00, (7) there was no evidence of conversion of assets by Thacker, (8) under Section 152.502 of the Texas Business Organizations Code, withdrawal of a partner occurs when an existing partner ceases to be a partner, (9) a partner may withdraw during winding down under Section 152.503 of the Texas Business Organizations Code, (10) the right to withdraw cannot be limited under Section 152.002 of the Texas Business Organizations Code, (11) after Thacker's withdrawal on February 17, 2015, there was no partnership under Section 152.051 of the Texas Business Organizations Code, and (12) Thacker is entitled to the full amount of requested attorney fees.

13

**II.    Factually Sufficient Evidence Supported the Trial Court's Finding that Boucher Was Not Entitled to Retirement or the Value of His Interest in the Firm**

Boucher argues that the evidence was factually insufficient to support the rejection of his breach of contract and conversion claims against Thacker.  In support, Boucher rehashes the evidence he presented at trial but, as explained below, did not properly challenge the trial court's factual findings in the trial court.  Because there was evidence supporting the trial court's unchallenged findings, we conclude that the trial court did not err in concluding that Boucher was not entitled to retirement or the value of his interest in the Firm or attorney fees.

> When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.

*R2 Restaurants, Inc. v. Mineola Cmty. Bank, SSB*, 561 S.W.3d 642, 653 (Tex. App.—Tyler 2018, pet. denied) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (per curiam) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)).

"We review a trial court's conclusions of law de novo." *State Office of Risk Mgmt. v. Joiner*, 363 S.W.3d 242, 247 (Tex. App.—Texarkana 2012, pet. denied).  "Conclusions of law may not be challenged for factual sufficiency, but are reviewed to determine their correctness based upon the facts." *Id.*  "We may review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment." *R2 Restaurants, Inc.*, 561 S.W.3d at 653 (citing *City of Austin v.*

14

*Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002))).

"[A]n appellant challenging the sufficiency of the evidence offered in a nonjury trial must challenge specific findings of fact." *Green v. Alford*, 274 S.W.3d 5, 17 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 319 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). This is because "a trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards." *R2 Restaurants, Inc.*, 561 S.W.3d at 653 (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). "We defer to unchallenged findings of fact that are supported by some evidence." *Id.* (citing *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014)); *see Pettit v. Tabor*, No. 06-19-00002-CV, 2020 WL 216025, at *13 (Tex. App.—Texarkana Jan. 15, 2020, pet. denied) (mem. op.) ("Unless no evidence supports the finding, or the contrary is established as a matter of law, we are bound by the trial court's unchallenged findings of fact."); *Nissan N. Am., Inc. v. Tex. Dep't of Motor Vehicles*, 592 S.W.3d 480, 496 (Tex. App.—Texarkana 2019, no pet.) ("[W]hen a court's findings of fact go unchallenged, such findings become undisputed facts binding on all parties." (quoting *Des Champu v. Featherston*, 886 S.W.2d 536, 541–42 (Tex. App.—Austin 1994, no writ) (per curiam))).

Although Boucher timely filed a document requesting additional findings of fact and conclusions of law, Boucher did not specifically challenge any of the factual findings entered by

15

the trial court. Rather, Boucher submitted forty additional findings of fact, several of which are slight variations of the trial court's original findings. Moreover, "nothing in [Boucher's] request for additional findings alerted the trial court that it had omitted . . . essential elements in its original findings." *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 254 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (trial court, as trier-of-fact, has no duty to make additional or amended findings that are unnecessary or contrary to the judgment or that conflict with the original findings). "A request for additional findings must be specific; it cannot be buried among minute differentiations or numerous unnecessary requests." *Stuckey Diamonds, Inc. v. Harris Cty. Appraisal Dist.*, 93 S.W.3d 212, 213 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Vickery*, 5 S.W.3d at 254).

Additionally, on appeal, Boucher does not challenge specific findings of fact. Instead, he challenges the trial court's general conclusions rejecting his claim that Thacker breached the Agreement, converted Firm assets for his own benefit, and erred in failing to award Boucher attorney fees for breach of contract.[5]

We find that there was evidence supporting the trial court's unchallenged factual findings that the Firm was dissolved before Boucher's notice of retirement and that Thacker withdrew before the effective date of Boucher's retirement. In turn, these factual findings supported the trial court's conclusions that Thacker did not breach the Agreement or any fiduciary duty owed to

---

[5]Boucher argues that Thacker converted the goodwill of the Firm and "claims that the [Agreement] determined the value of the goodwill to be paid to a retiring partner—and the parties agreed that that value was $306.728." Even so, he did not challenge the trial court's findings on this issue and specifically requested that the court find that the Firm "did not have any Goodwill."

16

Boucher, that Thacker did not convert assets from Boucher, and that Boucher was not entitled to retirement or the value of his interest in the Firm or attorney fees.

## III. We Reverse the Award of Attorney Fees to Thacker

Thacker's counsel filed an affidavit and detailed invoices showing that Thacker's attorney fees were $49,500.00. The trial court awarded those fees to Thacker. In his last point of error, Boucher argues that Thacker was not entitled to those fees because he failed to prove damages for any breach of the Agreement and because the Agreement did not specifically provide for attorney fees. We agree.

"A trial court's decision to grant or deny attorney's fees will not be disturbed absent an abuse of discretion." *Roddy v. Holly Lake Ranch Ass'n, Inc.*, 589 S.W.3d 336, 347 (Tex. App.—Tyler 2019, no pet.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). "In conducting our review, we view the evidence in the light most favorable to the trial court's ruling, and indulge every presumption in its favor." *Id.* (citing *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). "A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, without reference to guiding rules and principles of law." *Id.* (citing *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)).

"A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). Thacker's petition prayed for attorney fees under this statute. Damages sustained because of a breach is an essential element of a breach of contract claim. *Wasson Interests, Ltd. v. City of Jacksonville*, No. 12-13-00262-CV, 2019 WL

7373851, at *3 (Tex. App.—Tyler Dec. 31, 2019, pet. denied) (mem. op.). As a result, "[t]o recover fees under section 38.001, a party must prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *PlainsCapital Bank v. Miranda*, Nos. 13-16-00210-CV, 13-16-00463-CV, 13-16-00464-CV, 2018 WL 1325779, at *8 (Tex. App.—Corpus Christi Mar. 15, 2018, pet. denied) (mem. op.) (citing *Intercont'l Grp. P'ship v. K.B. Home Lone Star, L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997)); *see Int'l Med. Ctr. Enters., Inc. v. ScoNet, Inc.*, No. 01-16-00357-CV, 2017 WL 4820347, at *14 (Tex. App.—Houston [1st Dist.] Oct. 26, 2017, no pet.) (mem. op.) (citing *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015)); *Greater Houston Radiation Oncology, P.A. v. Sadler Clinic Ass'n, P.A.*, 384 S.W.3d 875, 896–97 (Tex. App.—Beaumont 2012, pets. denied); *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 548 (Tex. App.—Dallas 2005, no pet.); *Nolan v. Klement*, No. 14-00-00213-CV, 2001 WL 835561, at *1 (Tex. App.—Houston [14th Dist.] July 26, 2001, no pet.).

A finding that a defendant breached a contract without recovery of damages generally precludes an award of attorney fees. *PlainsCapital Bank*, 2018 WL 1325779, at *8 (reversing an award of attorney fees where a jury awarded zero dollars in damages for a breach of contract action); *see Greater Houston Radiation Oncology*, 384 S.W.3d at 896–97; *Pinehurst/Fairmount Partners, L.P. v. Concrete Prods., Inc.*, No. 05-00-01223-CV, 2001 WL 832351, at *3 (Tex. App.—Dallas July 25, 2001, pet. denied). Exceptions to this general rule arise when a party had obtained specific performance of a material contract right or when the contract sued on provides for attorney fees to a prevailing party. *See Felix v. Prosperity Bank*, No. 01-14-00997-CV, 2015

18

WL 9242048, at *2–3 (Tex. App.—Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op.);

*Pinehurst/Fairmount Partners*, 2001 WL 832351, at *3. The second exception results from the

rule that "[p]arties are free to contract for a fee-recovery standard . . . looser . . . than Chapter 38's."

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484–85 (Tex. 2019) (quoting

*KB Home Lone Star*, 295 S.W.3d at 653).[6]

Here, because Thacker did not recover damages and no contractual provision provided for

attorney fees to a prevailing party, Thacker was not entitled to an attorney fee award. As a result,

we sustain Boucher's first point of error.[7]

---

[6]Thacker argues that he is entitled to an attorney fee award as the prevailing party against Boucher's claim for breach of contract. While it is true that "[a] defendant can obtain actual and meaningful relief . . . by successfully defending against a claim and securing a take-nothing judgment on the main issue or issues in the case," the defendant must first produce a contract entitling a prevailing party to attorney fees because an award of damages is generally a predicate for an award of attorney fees under Chapter 38. *Rohrmoos Venture*, 578 S.W.3d at 486.

[7]Thacker presents two arguments for why this Court should sustain the attorney fee award. First, he argues that a promissory note executed by Boucher and Thacker to Garland C. Wright justified the award. That promissory note provided, "[It] is hereby specially agreed that if this Note is placed in the hands of any attorney for collection . . . MARK A. THACKER and JOE D. BOUCHER, jointly and severally, agree to pay reasonable attorney's fees incurred in such collection." This provision did not apply to this case since Boucher was not sued by Thacker for breach of this promissory note.

Second, Thacker argues he was entitled to attorney fees under Section 15.51(c) of the Texas Business and Commerce Code, which states,

> If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

TEX. BUS. & COM. CODE ANN. § 15.51(c). As a predicate to an award of attorney fees under this section, a plaintiff must prove that (1) defendant knew at the time the employment agreement was executed that the covenant did not contain limitations on time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect defendant's goodwill or other business interest, and (2) defendant sought to enforce the covenant to a greater extent than was necessary to protect its goodwill or other business interest. *Jackson v. Ali Zaher Enters., LLC*, No. 05-18-00288-CV, 2019 WL 698019, at *2 (Tex. App.—

## IV.    Cross-Appeal

Thacker argues that the trial court erred "in failing to award . . . [Thacker] for the acts of . . . Boucher . . . in not paying his share of the [partnership] debts."  Thacker asks this Court to "reverse and render damage to Appellee."  Boucher argues that this issue is not properly before us.  We agree.

"A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. . . . The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause."  TEX. R. APP. P. 25.1(c). Thacker's cross-appeal seeks to alter the trial court's judgment to obtain more favorable relief, and his brief fails to state any just cause that would permit the appeal in the absence of a timely notice of appeal.

Because Thacker failed to file a notice of appeal, we dismiss Thacker's cross-appeal.  *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004) (citing TEX. R. APP. P. 25.1(c)); *Sullivan v. Lepage-Sullivan*, No. 07-15-00081-CV, 2017 WL 393981, at *1 n.2 (Tex. App.— Amarillo Jan. 25, 2017, no pet.) (mem. op.); *Tex–Fin, Inc. v. Ducharne*, 492 S.W.3d 430, 447 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also* TEX. R. APP. P. 43.2(f).

---

Dallas Feb. 20, 2019, no pet.) (mem. op.); *see Sentinel Integrity Sols., Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 924–25 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).  Thacker did not mention Section 15.51 at trial, and nothing shows that he provided proof of or obtained findings on the predicates for an award of attorney fees under this Section. *See Sanders v. Future Com, Ltd.*, No. 02-15-00077-CV, 2017 WL 2180706, at *11 (Tex. App.—Fort Worth May 18, 2017, no pet.) (mem. op.) (finding attorney fees were not recoverable where "there [was] no evidence in the record that [the employer] knew at the time of the covenant's execution that its restrictions were unreasonable and imposed a greater restraint than was necessary").

## V. Conclusion

We reverse the trial court's award of attorney fees and render judgment that Thacker is not entitled to attorney fees. We affirm the remaining portions of the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:     July 22, 2020
Date Decided:       September 1, 2020